### PONTIFF v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. December 7, 1925.)

No. 1874.

1. **Intoxicating liquors ☞217—Indictment held sufficiently definite as to quantity of liquor transported.**

Indictment charging defendant with unlawfully transporting "one case, more or less," of intoxicating liquor, *held* sufficiently definite in matter of quantity of liquor transported in view of defendant's right, under National Prohibition Act, tit. 2, § 32 (Comp. St. Ann. Supp. 1923, § 10138½s), to bill of particulars, if desired.

2. **Intoxicating liquors ☞216—Indictment held sufficient, without allegation that liquor was fit for beverage purposes.**

Indictment charging unlawful transportation of intoxicating liquor *held* sufficient, without specific allegation that liquor was fit for beverage purposes.

3. **Intoxicating liquors ☞236(4)—Evidence held insufficient to sustain conviction for aiding and abetting unlawful transportation and possession of intoxicating liquors.**

Evidence warranting inference that defendant took his car to beach at night with purpose and intention of taking liquor away, but abandoned his purpose and left his car in possession of officers several hours before liquor arrived by boat, *held* insufficient to sustain conviction for unlawful transportation or possession, on theory that he had aided and abetted those unlawfully participating in such acts.

In Error to the District Court of the United States for the District of Massachusetts; John A. Peters, Judge.

Eugene Pontiff was convicted of unlawfully transporting and possessing intoxicating liquors, and he brings error. Judgment vacated, verdict set aside, and case remanded.

John H. Backus, of Boston, Mass. (John B. Lowney and Edward J. Harrington, both of New Bedford, Mass., on the brief), for plaintiff in error.

George R. Farnum, of Boston, Mass. (Harold P. Williams, of Boston, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a writ of error from a judgment of conviction

in the federal District Court for Massachusetts on an indictment containing two counts. The first count charged that the defendant "unlawfully and knowingly did transport intoxicating liquor containing over one-half of 1 per cent. of alcohol by volume as defined in the Act of Congress of October 28, 1919, commonly known as the National Prohibition Act, to wit, one case, more or less, thereof." The second count in like language charged that he unlawfully and knowingly possessed intoxicating liquor.

The jury returned a general verdict of guilty and the defendant was sentenced to pay a fine of $500.

The errors relied upon are that the court erred in overruling the defendant's motion to quash, in refusing to grant his motion to direct a verdict in his behalf at the close of the government's evidence and at the close of all the evidence, in its refusal to grant certain requests for instructions, in instructions that were given, and in the admission of evidence.

[1] As to the motion to quash, it is objected that the indictment does not definitely state the quantity of intoxicating liquor alleged to have been transported and that it was fit for beverage purposes. We do not regard either of these objections as calling for extended consideration. The defendant was informed by the indictment that he was charged with unlawfully transporting and unlawfully possessing intoxicating liquor, one case, more or less. The exact amount was not material. If the defendant desired greater particularity, the trial court could have directed the government to furnish a bill of particulars, if it deemed it proper to do so, as pointed out in section 32, tit. 2, of the act in question (Comp. St. Ann. Supp. 1923, § 10138½s).

[2] Neither do we think that it was necessary that the respective counts should contain a specific allegation that the intoxicating liquor was fit for beverage purposes. The indictment informed the defendant that he was charged with the unlawful transportation and possession of intoxicating liquor as defined in the National Prohibition Act. This was sufficient. We recognize that there is some difference of opinion as to this question, but we regard the weight of authority as against the defendant's contention. Massey v. United States (C. C. A.) 281 F. 293; Feinberg v. United States (C. C. A.) 2 F.(2d) 955; Davis v. United States (C. C. A.) 274 F. 928; Hensberg v. United States (C. C. A.) 288 F. 370; Strada v. United States (C. C. A.) 281 F. 143; contra, Brauer v. United States (C. C. A.) 299 F. 10.

[3] The government called in support of its case three witnesses—Sullivan, a prohibition agent; Carrier, his chauffeur; and McDonald, a chemist. The government's testimony was that on the night of October 7, 1924, at about 8:15 p. m., Sullivan and Carrier were riding on a road in Fair Haven, called the Sconiticut Neck road, leading from Fair Haven to the end of Sconiticut Neck, off from which a road led to a place called Wigwam Beach; that later that night, while riding on that road in the direction of the end of Sconiticut Neck, and at about half past 9 they saw a car coming from the opposite direction; Sullivan testified that it was a Hudson touring car; Carrier testified that it was a Hudson coach, a closed car; that as they approached this car their lights were out, and the lights of the other car were then extinguished; that when the cars came opposite each other it was seen that the Hudson car contained from two to four men; that the driver of that car, later identified by Carrier as the defendant, inquired as to the whereabouts of another car; that Carrier replied that it was somewhere in the rear, and they were going back to fix it; that, after proceeding some distance on the road towards the end of the Neck, Sullivan and Carrier turned about, and on reaching the branch road to Wigwam Beach turned down it; that beside the road, some 800 yards from the beach, they saw three cars parked; that they, there parked their car and proceeded on foot to reconnoiter; that Sullivan testified he saw some 18 or 20 men standing around down by the beach, but Carrier said he saw none at that time; that they then went on foot to the Sconiticut Neck road for assistance, and later, between half past 10 and half past 11, returned with a local officer to the beach, riding down in that officer's car with the lights on; that on arriving at the end of the road near the beach they saw two cars parked there, one a Packard and the other a Hudson touring car; Sullivan testified that he saw the defendant standing by the touring car; Carrier testified that he saw a man approach the car he was in, who came within 3 feet of him, and identified the person as the one he saw in the Hudson coach and that he was the defendant; that as that person passed he turned and went away more or less hurriedly, and was not thereafter seen; that after questioning some of the men Sullivan announced himself as a federal officer, and proceeded to search the cars and the beach for liquor, but found none; that, after searching the beach, he returned to the two cars and found that all

the men had gone, including the local officer; that about 2 o'clock in the morning one Santos came ashore in a boat containing cases of liquor; that Santos, with the aid of Sullivan and Carrier, unloaded the liquor from the boat to the beach and carried it up to the top of the bank; that Santos placed one case of liquor in the Packard car and one in the Hudson; that at this time no one was there but Sullivan, Carrier, and Santos; that Santos wished to know why Sullivan and Carrier did not turn their cars around, so as to be able to get away; that he asked where the crowd was, and would not help any further until "we (Sullivan and Carrier) had the crowd there"; that later he got into his boat and pushed off; and that afterwards Sullivan and Carrier put the liquor into some of the cars and took it up to Sconiticut Neck. The remaining witness for the government simply testified as to the contents of the liquor that was put into the cars.

The defendant himself took the stand, and called as witnesses Pickhardt, Halligan, and one Loveland, the latter of whom testified as to the weather on the night of October 7. The testimony of the defendant and of Pickhardt was to the effect that the defendant was not on the Sconiticut Neck road or at Wigwam Beach on the night in question, but was elsewhere; that he owned a Hudson touring car and a Hudson coach; that he had had the Hudson touring car painted and put into a garage for sale; that Halligan on October 7 took the car out of the garage to try it out with a view of purchasing it; that he knew nothing about any boat landing with liquor at Wigwam Beach and had nothing to do about it. Halligan testified that he was at Wigwam Beach on the night in question; that he arrived there about 11 o'clock; that he did not see the defendant, and that he was not there with him; that he had the defendant's Hudson touring car there on the beach, parked near another car; that in going there he was not acting in any way whatever for the defendant; that the defendant did not know he was going down to Wigwam Beach with the car, and while at the beach, between 11 and half past, he saw the Ford automobile, the local officer's car, come to the beach; and that he walked towards it and then went away.

If it be conceded that on the evidence the jury might find that the defendant was seen by Sullivan or Carrier at Wigwam Beach between 11 and half past 11 that night, standing beside the Hudson touring car or approaching the lighted car in which the officers went to the beach at that time, and that he then went away, it is evident that there was no evidence from which it could be found that he directly participated in the unlawful act of transporting the alcohol across the beach and placing it in the touring car. The case was not submitted to the jury on any such theory, but on the theory that he might be found guilty as a principal on either count, if he aided or abetted those directly participating in the unlawful act of transportation or possession; and the question is whether there was any substantial evidence from which the jury might reasonably find that at 2 o'clock in the morning when the liquor was transported across the beach and placed in the cars, the defendant aided or abetted the unlawful act or acts complained of. There was no evidence, and it apparently is not claimed that there was, from which it could be found that the liquor was brought in and taken across the beach that night in consequence of any prearrangement with or at the request of the defendant, and the question reduces itself to this: Could the defendant be found guilty of aiding and abetting the unlawful act from the fact, taken in connection with the other evidence, that his car was at the beach at 2 o'clock in the morning, when the liquor was transported across the beach and placed in it?

The most that can be reasonably inferred from the evidence is that the defendant may have heard that liquor was to be brought in and landed at the beach that night; that he and the Hudson touring car, which he owned, were there between 11 and 11:30 that night; that he went there with the intention of procuring liquor and taking it away, but that, on learning that officers had come, he left the place and abandoned his purpose; for there is no question that, if he was there between 11 and 11:30, he left the place for good, leaving his car unattended, except by the officers of the law. In order for the jury to have found that he was an aider and abettor in the illegal act of transporting the liquor across the beach at 2 o'clock in the morning, the evidence must have warranted the jury in finding that, although he was not present at the time, the car was left there by him with the purpose and intention of furthering and aiding the accomplishment of that illegal act. Such an inference was not warranted by the evidence. The only reasonable conclusion to be drawn from it was that, when he left the beach, he had abandoned his purpose and left the car subject to the control of the officers, who, the evidence shows, proceeded at once to search the cars and beach. In fact, the evidence discloses that

Sullivan and Carrier, after Santos arrived with the liquor, so conducted themselves with reference to the two cars at the beach as to give Santos to understand that these cars were theirs, for Sullivan testified that "Santos wanted to know why we did not turn our cars around, so as to be able to get away."

Furthermore the court instructed the jury that the touring car "was on the beach under the guidance and control of" the defendant, even though he had gone away two hours before, and did not permit the jury to pass upon the question as to whose control the car was in at the time the liquor was transferred across the beach and placed in it.

We do not find it necessary to consider in detail the exceptions taken to the charge. It is enough to say that it allowed the jury to find the defendant guilty if he went to the beach that night with his car, with the purpose and intention of taking liquor away, although the evidence showed that, long prior to the happening of the illegal act, he had abandoned his purpose and left the beach, and that the officers had taken control of the situation. See Hicks v. United States, 150 U. S. 442, 449, 14 S. Ct. 144, 37 L. Ed. 1137.

The other errors assigned are not likely to arise at another trial, and are not considered.

The judgment of the District Court is vacated, the verdict set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion.